United States District Court
Southern District of Texas
**ENTERED**
December 09, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASHLEY E. GARZA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:18-cv-168 |
| | § | |
| SOUTH TEXAS REHABILITATION, | § | |
| HOSPITAL, L.P., | § | |
|     Defendant. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 20, 2019, Plaintiff Ashley E. Garza ("Garza") filed her third amended complaint in this case. Dkt. No. 37. Garza alleges that she was subjected to gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, when Defendant South Texas Rehabilitation Hospital ("the Hospital") did not hire her for an occupational therapy assistant position. Id.

On August 30, 2019, the Hospital filed a motion for summary judgment. Dkt. No. 47. Garza has filed a response and the Hospital has filed a reply. Dkt. Nos. 52, 56. The motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B).

After reviewing the record and the relevant caselaw, it is recommended that the motion for summary judgment be granted. Garza has not shown a genuine dispute of material fact as to direct discrimination and she has not shown a genuine dispute of material fact as to her burden on the third step of the McDonnell-Douglas[1] analysis.

## I. Background

### A. Factual History

When deciding a motion for summary judgment, "[a]ll facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in its favor." McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 455

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

(5th Cir. 2019).  The factual history recounted below is written in view of that mandate.  Thus, the factual narrative is presented in the light most favorable to Garza.

In January 2015, Garza began working as a therapy assistant at the Hospital on a pro re nata ("PRN") basis. Dkt. No. 52-1, p. 7.  PRN workers are "as-needed workers," who have no set schedule. Hassen v. Ruston Louisiana Hosp. Co., L.L.C., 932 F.3d 353, 354 (5th Cir. 2019).  Garza stated that she would work when the Hospital "needed help.  If a therapist called in sick or was on vacation, I would fill in.  If there was an influx of patients, I would come and help the caseload.  So, there was no set schedule." Dkt. No. 52-1, p. 7.

In May of 2016, Kathryn Ramirez, a full time Certified Occupational Therapy Assistant at the Hospital gave notice that she would be resigning at the end of June 2016. Dkt. No. 52-3, p. 2.  She appears to have left that position in accordance with her notice.

Violeta Dellota, the director of therapy at the Hospital, was in charge of hiring Ramirez's replacement. Dkt. No. 52-2, p. 18.  Dellota was the Hospital official who interviewed and selected the replacement.  Dkt. No. 47-4, pp. 4-6.  Human Resources Director Tony Rodriguez would officially "offer" the job and discuss salary with the selected candidate. Id.

Dellota stated that it was "common knowledge" that Garza and another person, Monica Garza[1] — both of whom were serving as PRN workers — were interested in applying for the position. Id., p. 55.  Dellota asked Garza if she was interested; Garza replied, "I think so," but noted that she "wasn't making any solid commitments at that point." Id, p. 11.

On some unspecified date, Garza went to Dellota's office and asked for a job application for a friend, who was possibly interested in a different open position for a physical therapist. Dkt. No. 52-1, p. 10.  At that meeting, Garza also told Dellota that she "wanted to go for the full-time [therapy assistant] position." Id.

---

[1] To reduce confusion, the Court will refer to the Plaintiff as "Garza" and will refer to Monica Garza by her full name.

Garza testified that Dellota gave her the application for the physical therapist position; Garza asked Dellota if she needed to full out a written application for the therapy assistant position. Dkt. No. 52-1, p. 10.  Dellota replied, "No. We'll just — on the day you start, we'll just sign all the paperwork then." Id.

According to Garza, she had several further conversations with Dellota about the full-time position. Dkt. No. 52-1, p. 10.  When Garza informed Dellota that she could begin the full-time job on July 16, 2016, Dellota replied, "I'll talk to Tony and Leo about it," referring to Rodriguez, the Human Resources Director, and Leo Garza, the Hospital's CEO. Id., p. 11; Dkt. No. 52-2, p. 62.  When asked if Dellota ever officially informed her, Garza, that she was hired, Garza replied, "she never used those words." But, according to Garza, Dellota said, "Okay. Great. I'll get it started.  Let me run — make sure it's okay with Tony and Leo." Dkt. No. 52-1, p. 11.

In other conversations, Dellota would ask Garza "Are you sure? Are you sure? You have child care? You do have child care?" Id., p. 10.  Garza testified that "at least three times when I spoke with [Dellota] she would ask me, 'Are you sure you have child care?'". Id.  When Garza would remind Dellota about the July 16th proposed starting date, Dellota would say, "Yes, that's great. Happy to bring you on," but would then follow up with further questions about Garza's child care situation. Id., p. 12.

Garza also alleged that Dellota asked her about "my maternity, if I was going to have any more children, and she asked if my husband's job was going to transfer him." Dkt. No. 52-1, p. 29.  Garza did not say when these conversations took place or how she responded to those inquiries.

When her proposed start date — July 16, 2016 — passed without Garza being officially hired, she "assumed" that the patient case load was so low that the Hospital wasn't "bringing on full-time therapists at that time." Dkt. No. 52-1, pp. 14-15.

In September 2016, Garza was informed that a male applicant had been hired for the position that she had been discussing with Dellota. Dkt. No. 52-1, p. 14.

Dellota testified that Monica Garza filed a written application for the therapy assistant position and was offered the job. Dkt. No. 52-2, pp. 64, 68.  Monica Garza turned

the position down based on salary concerns. Id.  Dellota then offered the position to Diana Salinas Alvarez, a female applicant who did not work at the Hospital; Salinas Alvarez likewise turned down the position over salary concerns. Id., pp. 67-69.  A third female applicant, Hortencia Villegas, withdrew her application. Id., p. 70.

At that point, Dellota interviewed Jose Reyes, a male applicant, and offered him the position. Dkt. No. 52-2, p. 60.  Dellota was asked at her deposition, "When you got the Mr. Reyes' application and you all start to make a decision on offering him the position, did you call Ashley Garza and say, "Hey, we got these applications. We don't have yours"? Id., p. 73.  Dellota replied, "I did not even think of her," and followed up with that she had "assumed" that Garza had "lost interest" in the position because she had not heard from her. Id.  When asked if it was the Hospital's "position that Ms. Garza didn't get the position because she never applied for it," Dellota replied, "Yes, she never applied." Id., p. 80.

**B. Procedural History**

On October 22, 2018, Garza filed a complaint against the Hospital, alleging discrimination based on race, national origin and gender, under both Title VII of the Civil Rights Act of 1974 and the Texas Commission on Human Rights Act. Dkt. No. 1.  She also alleged that she was retaliated against for her complaints of discrimination. Id.

On May 20, 2019, Garza filed her third amended complaint, which is the operative complaint in this case. Dkt. No. 37.  In that complaint, Garza raised a single claim: that the Hospital discriminated against her based on her gender, in violation of Title VII. Id.  Garza dropped all other claims. Id.

On August 30, 2019, the Hospital filed a motion for summary judgment. Dkt. No. 47.  The Hospital argues that summary judgment is appropriate because:  (1) Garza cannot establish a prima facie case of discrimination because she never applied for the position; (2) the Hospital's non-discriminatory reason for not hiring Garza is the failure to apply; (3) Garza cannot show that the non-discriminatory reason was false or pretextual. Id.

On October 2, 2019, Garza timely filed her response to the motion for summary judgment. Dkt. No. 52.  In that response, Garza argued that (1) there is a genuine dispute of material fact as to whether she applied for the position; (2) the Hospital's non-

discriminatory reason is false and pretextual; and (3) Dellota's comments constituted direct evidence of discrimination. Id.

On October 16, 2019, the Hospital filed a reply brief. Dkt. No. 56.

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v.

Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).  Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075.  Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

### B. Employment Discrimination

When claiming employment discrimination, the plaintiff can prove their case in one of two ways: (1) evidence of direct discrimination or (2) circumstantial evidence of discrimination. Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 766 (5th Cir. 2019).

### 1. Direct Evidence

"In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." Herster v. Bd. of Supervisors of Louisiana State Univ., 887 F.3d 177, 185 (5th Cir. 2018).  Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002).  If the fact-finder "must draw inferences from the evidence, it is circumstantial, not direct." Reilly v. TXU Corp., 271 F. App'x 375, 379 n. 2 (5th Cir. 2008).  If the plaintiff's evidence of discrimination is circumstantial, then the Court must use the McDonnell-Douglas test. Herster, 887 F.3d at 184.

### 2. Circumstantial Evidence

When a plaintiff makes an employment discrimination claim based on circumstantial evidence, it is governed by the three-part, burden-shifting test, known as the McDonnell Douglas test, to judge claims of employment discrimination. Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 474 (5th Cir. 2015).  "Under the McDonnell Douglas analysis, a plaintiff is entitled to a presumption of discrimination if he can meet the minimal initial burden of establishing a prima facie case." Reed v. Neopost USA, Inc., 701 F.3d 434, 439 (5th Cir. 2012).

The <u>prima facie</u> elements of an employment discrimination claim are that the plaintiff: (1) "belongs to a protected class;" (2) "applied for and was qualified for a position for which applicants were being sought"; (3) "was rejected"; and (4) the person eventually hired was "outside of [the] protected class." <u>Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.</u>, 482 F.3d 408, 412 (5th Cir. 2007). The plaintiff must meet "every element of a <u>prima facie</u> case." <u>Cherry v. CCA Properties of Am. Liab. Corp.</u>, 438 F. App'x 348, 352 (5th Cir. 2011). In order to survive summary judgment, the plaintiff "must raise a genuine issue of material fact as to each element of his <u>prima facie</u> case." <u>Stancu v. Hyatt Corp./Hyatt Regency Dallas</u>, No. 18-11279, 2019 WL 5390629, at *3 (5th Cir. Oct. 21, 2019) (quoting <u>Medina v. Ramsey Steel Co.</u>, 238 F.3d 674, 680 (5th Cir. 2001)).

As to the second element — applying for the position — the plaintiff "must show that 'he applied for' the position sought." <u>Thomas v. Tregre</u>, 913 F.3d 458, 463 (5th Cir. 2019). The failure to apply for the position is generally fatal to a <u>prima facie</u> claim of discrimination. <u>Id.</u> "When no application was made, a plaintiff must show that such an application would have been a futile gesture." <u>Jenkins v. Louisiana Workforce Comm'n</u>, 713 F. App'x 242, 245 (5th Cir. 2017) (internal quotation marks omitted) (quoting <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 406 (5th Cir. 1999)). A futile gesture claim "usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." <u>Rodriguez v. Brownsville Indep. Sch. Dist.</u>, 739 F. App'x 227, 231 (5th Cir. 2018), as revised (Aug. 3, 2018) (quoting <u>Shackelford</u>, 190 F.3d at 406).

"After the plaintiff establishes a <u>prima facie</u> case, the burden shifts to the employer to show a legitimate, nonretaliatory reason for the adverse employment action." <u>Black v. Pan Am. Labs., L.L.C.</u>, 646 F.3d 254, 259 (5th Cir. 2011). The Court does not reach this step unless the plaintiff has first demonstrated every element of a <u>prima facie</u> case. <u>Byers v. Dallas Morning News, Inc.</u>, 209 F.3d 419, 429 (5th Cir. 2000).

If the defendant meets its burden at the second step, then "the presumption of discrimination created by the plaintiff's <u>prima facie</u> case disappears and the plaintiff must

meet its ultimate burden of persuasion on the issue of intentional discrimination." Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005).

At this stage of the proceedings, there are two methods by which Garza can meet her burden and avoid summary judgment: (1) showing that the Hospital's given rationale for not hiring her is false or unworthy of credence; or (2) providing evidence of "disparate treatment" to show that discrimination was at the heart of the decision. Gill v. DIRTT Envtl. Sols., Inc., No. 18-50901, 2019 WL 5541286, at *2 (5th Cir. Oct. 25, 2019).

## III. Analysis

In her third amended complaint, Garza makes a single claim: that she was discriminated against in seeking the full-time therapy assistant position based on her gender. The Court will analyze this claim both under a "direct discrimination" analysis, as well as the traditional three-step McDonnell Douglas test for circumstantial evidence. For the reasons discussed below, Garza has not shown a genuine dispute of material fact as to direct evidence of discrimination. Likewise, she has not shown a genuine dispute of material fact as to the third stage of the McDonnell Douglas test.

### A. Direct Evidence

Garza argues that she has presented direct evidence of discrimination by the Hospital, precluding summary judgment. Dkt. No. 52, p. 18. Even viewing all evidence and inferences in the best possible light for Garza, she has failed to show a genuine dispute of material fact as to direct discrimination.

According to Garza, when she and Dellota discussed her possible start date of July 16th, Dellota would ask her, "Are you sure? Are you sure? You have child care? You have child care?" Dkt. No. 52-1, p. 10. Garza testified that Dellota asked her if she was sure that she had childcare "at least three times" when they spoke about the position. Id. Garza further testified that, at some unspecified point in time, Dellota asked about her "maternity, if [Garza] was going to have any more children and she asked if [Garza's] husband's job was going to transfer him." Id., p. 29.

These remarks do not rise to the level of direct discrimination. At best, these statements raise the inference of gender discrimination. The listener must infer that Dellota

would not have asked a male applicant about childcare issues; whether he would be having more children; whether he planned on taking paternity leave; or if his wife's job would require a transfer.  In cases where the courts have found evidence of direct discrimination, no such inferences were required.   In those cases, the speaker directly linked their statements to a discriminatory animus. See Portis v. First Nat. Bank of New Albany, Miss., 34 F.3d 325, 329 (5th Cir. 1994) (supervisor told female employee that she "would never be worth as much as a man to the bank"); Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 476 (5th Cir. 2015) (supervisor stated the employee was "too black to do various tasks at the casino"); Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 993 (5th Cir. 2005) (supervisor told applicant that "I've been told not to hire too many blacks in the poker room").  Dellota made no remarks that directly tied her questions to Garza's gender, precluding a finding of direct discrimination.  Accordingly, the Court must analyze Garza's gender discrimination claim under the McDonnell-Douglas test. Herster, 887 F.3d at 184.

### B. McDonnell-Douglas test

#### 1. Prima Facie Case

As previously noted, to show a prima facie of gender discrimination, Garza must introduce facts showing that she: (1) "belongs to a protected class;" (2) "applied for and was qualified for a position for which applicants were being sought"; (3) "was rejected"; and, (4) the person eventually hired was "outside of [the] protected class." Burrell, 482 F.3d at 412.  Garza has demonstrated a genuine dispute of material fact as to each of these elements.

As an initial matter, Garza meets the first element; gender is a protected classification. Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013).  The remaining elements, however, are not as easily resolved.

As to the second element, the key issue and central dispute in this motion for summary judgment is whether Garza applied for the position.  In  her  deposition,  Garza testified that she went to visit Dellota's office to pick up a job application for a friend for an open physical therapist position. Dkt. No. 52-1, p. 10.   Dellota handed Garza an

application for the friend. Id.  Garza then expressed an interest in the full-time therapy assistant position. Id. ("then I said I wanted to go for the full-time position.").  Garza asked if she needed a written application for the therapy assistant position and Dellota replied, "No. We'll just — on the day you start, we'll just sign all of the paperwork then." Id.

Dellota disputes that she told Garza that no application was necessary. See Dkt. No. 47-4, p. 4 ("I specifically remember telling Ashley to go ahead and apply for the position."). Rodriguez, the human resources director, asserted in a sworn affidavit that all job applicants "are required to submit a written application." Dkt. No. 47-2, p. 3.  It is not the Court's role to sort out whether the conversation occurred as Garza or as Dellota recounted it; that is the province of the jury. See Heinsohn v. Carabin & Shaw, P.C., 832 F.3d 224, 245 (5th Cir. 2016) (when deciding a motion for summary judgment that "is premised almost entirely on the basis of depositions, declarations, and affidavits, a court must resist the urge to resolve the dispute [. . .] Instead, the finder of fact should resolve the dispute at trial").

The Hospital has described Garza's testimony as "self-serving." Dkt. No. 47, p. 18. The Court notes that all testimony is self-serving on some level; furthermore, the Court cannot disregard testimony on that basis. Heinsohn, 832 F.3d at 245 (rejecting testimony for being self-serving is "inconsistent with fundamental rules governing summary judgment").

Thus, the question before the Court is whether under Garza's version of events, she applied for the position.  This question does not fit easily within any of the existing precedents.

Typically, when a plaintiff did not apply for a position, there is no factual dispute as to the lack of an application; in those circumstances, the plaintiff must show that the defendant employer had "a known and consistently enforced policy of discrimination." Rodriguez, 739 F. App'x at 231.  This case, however, presents a factual dispute about whether Garza applied for the position, making that line of precedent inapplicable here.

Garza spoke with Dellota, who was the supervisor with the authority to fill the position. See Dkt. No. 47-4, pp. 4-6 (Dellota outlining that she was the one who "selected"

people for the position and that Rodriguez was the one who would officially "offer" the job and discuss compensation).  Neither party has disputed Garza's authority to decide who would fill the position.

After asking for — and receiving — a job application for a friend for a different position, Garza expressed an interest in the therapy assistant position and asked if she needed a written application for that position. Dkt. No. 52-1, p. 10.  Dellota purportedly replied, "No. We'll just — on the day you start, we'll just sign all of the paperwork then." Id.  Even if the Court credits Rodriguez's contrary statement, that all job candidates must fill out an application, Dellota's purported statement raises a clear inference that the application requirement could be fulfilled by completing a backdated application after the job was offered and accepted.  Furthermore, when viewed in the context of the discussion about Garza's friend and her application, Dellota's purported statement, about Garza not needing to fill out an application, is unambiguous.  Based upon Garza's testimony, a reasonable fact-finder could conclude that Garza had an objective basis to believe that she had done all she was required to do to apply for the position.

The question of whether the plaintiff actually applied for a position is a factual question for the jury to resolve. McMullin v. Mississippi Dep't of Pub. Safety, 782 F.3d 251, 259 (5th Cir. 2015); Jones v. City of Dallas, Texas, No. 3:16-CV-2303-S, 2018 WL 2417853, at *4 (N.D. Tex. May 29, 2018).  In McMullin, the plaintiff expressed an interest in serving as the captain in the training division of the Mississippi Department of Public Safety.  After she was not selected for the position, the defendants asserted that she had never applied for that job, but rather for a lieutenant position.  The Fifth Circuit found that there was a genuine dispute of material fact as to: (1) whether the plaintiff applied for the captain position; and (2) whether the defendant's claims about the different positions was a pretext and that those factual disputes were for "a factfinder to resolve." Id.

Taking the evidence and reasonable inferences in Garza's favor, a factfinder could conclude that (1) Garza expressed an unequivocal interest in the full-time therapy assistant position; (2) Garza asked Dellota — the person with hiring authority — if she needed to complete a job application to formally apply for the position and was told that she did not;

and, (3) based on Dellota's response, Garza had done everything that she was required to do to apply for the position.

Because there is a genuine dispute of material fact as to whether Garza applied for the position, summary judgment is inappropriate as to this element of Garza's <u>prima facie</u> case.

Similarly, as to the third element — that Garza was rejected for the position — there is a genuine dispute of material fact.  Under Garza's version of events, she was told that she did not need to complete an application; she discussed her proposed start date with Dellota and found out later that someone else had been hired to fill the position. Dkt. No. 52-1, pp. Dkt. No. 52-1, p. 20.  Under Dellota's version of events, Garza never filled out the required application, so she was never considered for the position, much less rejected. Dkt. No. 47-4.  Accordingly, there is a genuine dispute of material fact as to whether Garza was rejected for the position or whether her purported failure to apply for the job meant she was never considered.  Summary judgment is inappropriate as to this element.

As to the fourth element — that the position was offered to someone outside of the Garza's protected class — there is also a genuine dispute of material fact.  The person ultimately hired for the position was a male, who was outside of Garza's protected class. The Hospital reasonably points out that the position was offered to two females, who turned it down based on the salary offered, before the male applicant was offered the position. Dkt. No. 47, pp. 19-20.  While the fact that the position was offered to members of the protected class before it was accepted by a non-protected class member has persuasive value, it does not <u>per se</u> negate Garza's ability to meet the fourth element of the prima facie case. <u>Connelly v. Joseph Schlitz Brewing Co.</u>, 600 F.2d 461, 462 (5th Cir. 1979).  Thus, there is a genuine dispute of material fact as to this element, rendering summary judgment inappropriate.

Taking all of the facts and inferences in the light most favorable to Garza, she has established a <u>prima facie</u> case of discrimination by the Hospital.  The Court now turns to the second step in the <u>McDonnell Douglas</u> test, namely whether the Hospital has shown a non-discriminatory basis for not hiring Garza.

### 2. Nondiscriminatory Reason

At this stage in the proceedings, the Hospital has the burden to "articulate a legitimate, nondiscriminatory reason for its decision." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). Because this is the employer's "burden of production," it "need not prove that it was actually motivated by its proffered reason." Id. "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). "[T]o meet its burden of production under McDonnell Douglas, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th Cir. 2015) (quoting Patrick at 317) (emphasis original).

The Hospital's articulated reason is simple: it claims that Garza never formally applied for the position, so she was never considered for the position. Dkt. No. 47-2, p. 5. Furthermore, Dellota testified at her deposition that she assumed that Garza had "lost interest" in the position, because Garza never followed up after that initial conversation. Dkt. No. 47-3, p. 9.

The failure to apply for the position and the lack of follow up from Garza would be a nondiscriminatory and sufficiently specific reason for choosing not to hire her. For that reason, the Hospital has met its burden at this stage of the proceeding. The Court now turns to whether Garza has introduced evidence that would lead a reasonable fact-finder to conclude that the Hospital's proffered reason is pretextual.

### 3. Pretext

As previously noted, there are two methods by which Garza can meet her burden at this stage and avoid summary judgment: (1) showing that the Hospital's given rationale for not hiring her is false; or (2) providing evidence of "disparate treatment." Gill, 2019 WL 5541286, at *2. The Court will address each of these in turn.

#### a. Falsity of Stated Reason

As pointed out earlier, when an employer gives a non-discriminatory reason for its decision, the Court does not assess the credibility of that stated reason. Reeves, 530 U.S.

at 142.  This limitation, however, does not preclude all consideration of the purported reason for the act.  At the final stage of the McDonnell-Douglas test, the plaintiff can attack the credence of the employer's stated reason.  "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of the employer's true motive." Gill, 2019 WL 5541286, at *2 (cleaned up)[2] (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002)).

In these circumstances, the decision as to "[w]hether summary judgment is appropriate depends on numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Price v. Fed. Exp. Corp., 283 F.3d 715, 720 (5th Cir. 2002) (internal quotation marks omitted) (quoting Reeves, 530 U.S. at 148-49).  For the reasons set out below, summary judgment is appropriate.

Garza argues that the fact-finder can find that the Hospital's stated reason — the lack of a written application — is unworthy of credence.  In support of that assertion, Garza makes three arguments: (1) the internal job posting "gave no instructions whatsoever as to how an internal application must be received"; (2) Garza applied for the job by directly asking Dellota for an application; and (3) Garza was already working at the Hospital.  Dkt. No. 52, p. 17.  While all of these arguments attack the Hospital's credibility, the Court must also consider other factors. Price, 283 F.3d at 720.

The Court begins by assessing the strength of Garza's prima facie case.  The fourth element of the prima facie case — whether Garza was replaced by someone outside of her protected class — is extraordinarily weak.  The job was offered to two women, each of

---

[2] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3 (Md. Ct. Spec. App. Dec. 1, 2017); see also Flores-Abarca v. Barr, 937 F.3d 473, 479-81 (5th Cir. 2019) (using "cleaned up").

whom turned it down over salary concerns.  Had either woman accepted the position, Garza would not have a prima facie case.  See Hall v. Michigan State Police Dep't, 290 F. App'x 913, 918 (6th Cir. 2008) (noting that the case for discrimination fails when a person of the same protected class is offered the position, even if that candidate ultimately declines to accept the position).

Furthermore, the fact that Dellota — the person in charge of interviewing and recommending candidates — was a member of the same protected class also cuts against Garza's prima facie case.  "Although certainly not dispositive, that the decision-maker is also a member of the protected class may reasonably lend itself to an inference of nondiscrimination." Grubbs v. N. Mississippi Med. Ctr., Inc., 140 F.3d 1037 n. 8 (5th Cir. 1998) (citing Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)).  As such, the weaknesses in Garza's prima facie case cut against a finding that the Hospital's given reason is false.

Secondly, the probative evidence disputing the Hospital's stated reason is not strong.  The primary evidence is a disputed conversation between Garza and Dellota regarding the application process.  Moreover, Tony Rodriguez, the Human Resources Director,  stated that when the Hospital "has an open position, applicants are required to submit a written application." Dkt. No. 47-2, p. 3 (emphasis added).  While the Court cannot resolve any credibility disputes at this stage, what appears undisputed is that the process outlined in Garza's version of events — where the written application requirement is ignored or backdated for PRNs looking to move to a full-time position — does not appear to be corroborated by any admissible evidence.  In short, Garza lacks admissible evidence that any other PRN was hired in that fashion.

The only evidence of a PRN being hired in that fashion — without a written application — comes from hearsay offered by Kathryn Ramirez, whose position Dellota was filling.  Ramirez states that she once had a conversation with Amanda Ambriz, a former physical therapist at the Hospital, who purportedly told Ramirez that she — Ambriz

— "did not recall submitting an application when she switched from PRN to full time." Dkt. No. 56-1, p. 3.[3]

If this statement is being offered for the proposition that the Hospital has hired PRNs to full time jobs without requiring an application, then the statement is hearsay and does not fit into any of the exceptions. FED. R. EVID. 801 & 803.  As such, it cannot be considered competent summary judgment evidence. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 510 n. 5 (5th Cir. 2001).  Garza has not produced any admissible evidence that the written application requirement was routinely waived for other PRNs, but was intentionally applied to her.  Indeed, the evidence shows the opposite. Monica Garza, who was a PRN and was offered the position, had filled out a written application for the position.  There is no indication in the record that Monica Garza's application was backdated in any fashion.

In short, while the job posting did not expressly require a written application, there is no competent summary judgment evidence showing that the Hospital had a pattern of permitting applicants to apply without a written application.  This statement holds true even for PRNs who were already working at the Hospital.

In light of the weakness of Garza's prima facie case and the lack of corroborating probative evidence of the falsity of the Hospital's stated reason, summary judgment would be warranted.  That, however, is not the last question.  Instead, the Court must also consider whether Garza has produced a genuine issue of material fact as to disparate treatment.

---

[3] Ramirez filed two affidavits in this case. Dkt. Nos. 52-3, 56-1. In the first affidavit, offered by Garza, Ramirez states that "several" of her former colleagues at the Hospital "had switched from PRNs to full time employees without having to formally apply for a change in their status." Dkt. No. 52-3.  In that statement, she does not specifically identify those colleagues, rendering her statement as conclusory.  "Mere conclusory allegations are insufficient to defeat summary judgment." Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010).  In her second affidavit, offered by the Hospital, Ramirez identifies Ambriz as the only former colleague that she can specifically recall moving from PRN to fill-time status without having to submit a written application. Dkt. No. 56-1, p. 3.   Accordingly, the Court is only crediting the second statement, given its factual specificity.

### b. Disparate Treatment

As previously noted, Garza can alternatively meet her burden at the third stage by providing evidence of "disparate treatment," thereby providing evidence that discrimination was at the heart of the decision. Gill, 2019 WL 5541286, at *2.  For the reasons discussed below, Garza has failed to demonstrate a genuine dispute of material fact under this approach.

To avoid summary judgment, Garza "must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." Chapple v. Texas Health & Human Servs. Comm'n, No. 18-51086, 2019 WL 6210878, at *2 (5th Cir. Nov. 20, 2019).  Thus, Garza must introduce evidence from which a reasonable fact finder could find that the Hospital's rationale for not hiring her is "unworthy of credence." Gill v. DIRTT Envtl. Sols., Inc., No. 18-50901, 2019 WL 5541286, at *2 (5th Cir. Oct. 25, 2019).

"Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations." Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989).  In this vein, Title VII does not prohibit employers from discriminating "based on caregiving responsibility." Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009).  Title VII does, however, prohibit employers from gender-based discrimination based upon gender, plus another ostensibly neutral characteristic. Lewis v. 20th-82nd Judicial Dist. Juvenile Prob. Dep't, 190 F.3d 538 (5th Cir. 1999) (citing Coleman v. B-G Maintenance Management of Colorado, Inc., 108 F.3d 1199, 1203 (10th Cir. 1997)); Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084, 1089 (5th Cir. 1975).  This type of discrimination is known as "gender-plus" discrimination. Id.

Gender-plus discrimination occurs when an employer discriminates against a subclass of employees within a gender, but does not apply that same standard to the corresponding subclass of employees within the opposite gender.  For example, an employer may legally discriminate based upon an employee's weight. Smith v. Progressive Stamping and Plating, Inc., No. 05-1262, 2006 WL 1895468, at *4 (W.D. La. 2006).  But an employer cannot legally treat overweight males more favorably than overweight

females, or vice versa; it would represent discrimination based on gender.  At the same time, a gender discrimination claim cannot be based upon the disparate treatment between overweight females and non-overweight females; there is no gender-based animus behind that decision.  Thus, the dispositive question, in a gender-plus claim, is whether members of the opposite gender, who possess that same characteristic, are treated more favorably.

In short, "unlawful sex discrimination occurs when an employer takes an adverse job action on the assumption that a woman, because she is a woman, will neglect her job responsibilities in favor of her presumed childcare responsibilities. It is undoubtedly true that if the work performance of a woman (or a man, for that matter) actually suffers due to childcare responsibilities (or due to any other personal obligation or interest), an employer is free to respond accordingly, at least without incurring liability under Title VII." Chadwick, 561 F.3d at 44–45.  Thus, the determinative question in this case is whether a reasonable fact-finder could conclude that the Hospital did not hire Garza for the permanent position, on the assumption that she would neglect her job responsibilities based upon child care issues and would not have treated a male applicant with children in the same fashion.

There is no evidence in the record that male applicants or employees with children were given more favorable treatment than female applicants or employees with children. While a man, Jose Reyes, was ultimately hired for the position, there is no evidence in the record as to whether he had children or whether any Hospital employees knew if he had children.  No evidence has been offered showing that the Hospital ever treated male applicants/employees with children more favorably than female applicants/employees with children.

The fact that Dellota may have favored Monica Garza — a married, childless female — over Ashley Garza — a married mother — is irrelevant to the analysis. See Dkt. No. 52-2, pp. 67-68 (Dellota testifying that it was "common knowledge" at the Hospital that Monica Garza was married, but childless).  The proper comparison is not between mothers and childless women; the proper comparison is between mothers and fathers. Lewis, 190 F.3d at 538 ("To be actionable, ... gender-plus discrimination must be premised on gender.") (ellipses and emphasis original) (quoting Coleman, 108 F.3d at 1203).  There

simply is no evidence in the record that the Hospital treated fathers more favorably than mothers.

Given the complete lack of evidence of disparate treatment in the record, the Hospital is entitled to summary judgment.

## IV. Recommendation

It is recommended that the motion for summary judgment filed by South Texas Rehabilitation Hospital be granted. Dkt. No. 47.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on December 9, 2019.

Ronald G. Morgan
United States Magistrate Judge